Court of Appeals Docket #: 14-1937
## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DR. GREGG BATTERSBY,

<u>Plaintiff-Appellant</u>

v.

JOSEPH CAREW, RICHARD HEAVNER, BRIAN
HUGHES, JEANNE MCDANIEL-GREEN, JOHN
MCGINNIS, DAVID MRUZ, RALPH ROLES,
HARVEY GARCIA, E. J. MERCER AND JOHN
DOES 1-10,

<u>Defendants-Appellees</u>.

_____

On Appeal From A Final Order Granting Summary
Judgment for Defendants.

_____

## BRIEF FOR PLAINTIFF-APPELLANT
_____

BRUCE FEIN (D.C. Bar No. 446615)
BRUCE FEIN & ASSOCIATES, INC.
722 12th St. NW, 4th Floor
Washington, D.C. 20036
Telephone:  (703) 963-4968
Facsimile:  (202) 478-1664
bruce@feinpoints.com
*Attorney for Plaintiff-Appellant*

DONALD L. SMITH (South Carolina Bar No. 6626)
122 N. Main Street
Anderson, SC 29621
Telephone:  (864) 642-9284
Facsimile:  (864) 642-9285
Email: attorneydonaldsmith@gmail.com
*Attorney for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

A Corporate Disclosure Statement is not applicable pursuant to 4th Circuit Rule 26.1 and Federal Rule of Appellate Procedure 26.1.

The Appellant and Appellees in the above-captioned matter are individuals.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**_____**ii**

**TABLE OF CONTENTS** _____ **iii**

**TABLE OF AUTHORITIES** _____ **v**

**I.   STATEMENT OF JURISDICTION** _____ **1**

**II.   STATEMENT OF THE CASE**_____ **2**

**III.  ISSUES PRESENTED**_____ **7**

**IV.  SUMMARY OF ARGUMENT** _____ **8**

**V.   ARGUMENT** _____ **11**

   A.   STANDARD OF REVIEW _____ **11**

   B.   APPELLEES WERE NOT ACTING IN A QUASI-JUDICIAL
   CAPACITY BY INDEFINITELY SUSPENDING APPELLANT'S
   CHIROPRATIC LICENSE AND REFUSING TO PROVIDE HIM A
   POST-DEPRIVATION EVIDENTIARY HEARING AT ANY TIME TO
   CONTEST THE FACTUAL PREDICATE OF THE TSO. _____ **11**

   C.   APPELLEES ARE NOT ENTITLED TO QUALIFIED IMMUNITY
   AS THE CONSTITUTION CLEARLY REQUIRES A PROMPT POST-

DEPRIVATION EVIDENTIARY HEARING WHEN A PROFESSIONAL

LICENSE IS SUSPENDED AND NO REASONABLE PERSON COULD

BELIEVE THAT APPELLEES' REFUSAL TO HOLD A POST-

DEPRIVATION EVIDENTIARY HEARING—EVER—TO ENABLE

APPELLANT TO CONTEST THE FACTUAL PREDICATE OF THE TSO

SATISFIED PROCEDURAL DUE PROCESS._____ **23**

D.    APPELLANT  WILL NOT BE ABLE TO PRESENT HIS FEDERAL

TSO PROCEDURAL DUE PROCESS CLAIM IN THE STATE

ADMINISTRATIVE PROCEEDING OR ON APPEAL, WHICH MAKES

THE *YOUNGER V. HARRIS* DOCTRINE INAPPLICABLE AND THE

DISTRICT COURT 'S ABSTENTION ERRONEOUS. _____ **34**

**VI.  CONCLUSION**_____**41**

**VII. CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 32(A)(7) 43**

**CERTIFICATE OF SERVICE** _____**44**

## TABLE OF AUTHORITIES

### FEDERAL CASES

Barry v. Barchi, 443 U.S. 55 (1979) ...................................................... 20

Battersby v. Carew, C.A. No. 8:14-761-HMH (D. S.C. Aug. 28, 2014) ............. 5

Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) ................................... 10

Brock v. Roadway Express, Inc., 481 U.S. 252 (1987) ......................... 21

Burns v. Reed, 500 U.S. 478 (1991) ...................................................... 11

Butz v. Economou, 438 U.S. 478 (1978) ............................................... 11

Cleavinger v. Saxner, 474 U.S. 193 (1985) .......................................... 12

Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985) ................... 21

Coles v. Levine, 561 F.Supp 146 (D. Md. 1983) .................................. 13

Dalton v. Hutto, 713 F.2d 75 (4th Cir. 1983) ...................................... 22

Deakins v. Monaghan, 484 U.S. 193 (1988) ......................................... 27

Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126 (4th Cir. 1995) ................. 27

FDIC v. Mallen, 486 U.S. 230 (1988) .................................................... 20

Forrester v. White, 484 U.S. 219 (1988) ............................................... 11

Gerstein v. Pugh, 420 U.S. 103 (1975) .................................................. 27

Gibson v. Berryhill, 411 U.S. 564 (1973) .............................................. 22

Giuffre v. Bissell, 31 F.3d 1241 (3rd Cir. 1994) .................................. 13

Goldberg v. Kelly, 397 U.S. 254 (1970) ................................................ 22

Goldstein v. Moatz, 364 F.3d 205 (4th Cir. 2004) ............................... 13

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ........................................... 20

Haw. House. Auth. Midkiff, 467 U.S. 229 (1984) ............................... 27

INS v. Lopez-Mendosa, 438 U.S. 1032 (1984) ...................................... 17

Juidice v. Vail, 430 U.S. 327 (1977) ...................................................... 27

Kalina v. Fletcher, 522 U.S. 118 (1997) ................................................. 12

Manion v. Mich. Bd. of Medicine, 765 F.2d 590 (6th Cir. 1985) ..................... 14

Martin Marietta Corp. v. Md. Comm'n on Human Relations, 38 F.3d 1392
    (1994) ...................................................................................... 27

Mathews v. Eldridge, 424 U.S. 319 (1976) ............................................. 22

Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423
    (1982) ...................................................................................... 27

Mullhane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) ........... 22

Parratt v. Taylor, 451 U.S. 527 (1981) ................................................. 21

Pate v. United States, 277 F.Supp.2d 1 (D.D.C. 2003) ............................... 14

Phillips v. Virginia Bd. of Med., 749 F.Supp. 715 (E.D. Va. 1990) ................. 27

Pierson v. Ray, 386 U.S. 547 (1967) .................................................... 11

Pulliam v. Allen, 466 U.S. 522 (1984) .................................................. 19

Richter v. Conner, No. 93-1433, 1994 WL 118011 (4th Cir. Apr. 8, 1994) ...... 16

Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994) .......................................... 10

Simopoulos v. Virginia State Bd. of Medicine, 644 F.2d 321 (4th Cir. 1981) .. 28

Suggs v. Brannon, 804 F.2d 274 (4th Cir. 1986) ..................................... 27

Thompson v. Duke, 882 F.2d 1180 (7th Cir. 1989) ................................... 15

Timmerman v. Brown, 528 F.2d 811 (4th Cir. 1975) ................................. 19

Walker v. Prince George's County, Md., 575 F.3d 426 (4th Cir. 2009) ........... 10

Ward v. Johnson, 690 F.2d 1098 (4th Cir. 1982) ..................................... 12

Wilson v. Layne, 526 U.S. 603 (1999) .................................................. 20

Wolff v. McDonnell, 418 U.S. 539 (1974) .............................................. 14

Wood v. Strickland, 420 U.S. 308 (1975) .............................................. 19

Younger v. Harris, 401 U.S. 37 (1971) ................................................. 26

STATE CASES

**Bone v. U.S. Food Serv., 744 S.C. 67 (S.C. 2013)** ................................. **30**

**Marietta Garage v. Dep't of Pub. Safety, 352 S.C. 95 (S.C. Ct. App. 2002)**.... **29**

**S.C. Baptist Hosp. v. S.C. Dep't of Health & Envt'l Control, 291 S.C. 267 (S.C.
1987)** ......................................................................................... **29**

## ADMINISTRATIVE HEARINGS

**In the Matter of Gregg Newton Battersby, DC, OIE # 2013-24 (S.C. Dep't of
Labor, Licensing, & Regulation, State Bd. of Chiropractic Exam'rs)**........... **3**

## FEDERAL STATUTES

**28 U.S.C. § 1291** ........................................................................... **1**

**28 U.S.C. § 1331** ........................................................................... **1**

**42 U.S.C. § 1983** ........................................................................... **1**

## STATE STATUTES

**S.C. Code Ann. § 1-23-320** .............................................................. **24**

**S.C. Code Ann. § 1-23-370(c)** .......................................................... **24**

**S.C. Code Ann. § 1-23-380(A)**.......................................................... **29**

## STATE REGULATIONS

**S.C. Reg. § 25-9** ........................................................................... **24**

## CONSTITUTIONAL PROVISIONS

**U.S. Const. amend. XIV, § 1** ........................................................... **20**

# I.    STATEMENT OF JURISDICTION

The United States District Court for the District of South Carolina possessed subject matter jurisdiction of the case under 28 U.S.C. § 1331 because the Plaintiff/Appellant's claims arose under 42 U.S.C. § 1983 and the United States Constitution.

This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 1291 based on the August 28, 2014 final order of the District Court granting summary judgment for the Defendants/Appellees.  Plaintiff/Appellant filed a timely Notice of Appeal on September 10, 2014 which was transmitted to the U.S. Court of Appeals for the Fourth Circuit on the same date.

## II.    STATEMENT OF THE CASE

Appellees are members of the South Carolina Board of Chiropractic Examiners (the "Board"). On August 20, 2013, the Vice Chairman of the Board summarily issued an Order of Temporary Suspension (the "TSO") with no termination date, suspending Appellant's license to practice chiropractic. App. to Br. for Pl./Appellant at 40-43. It continues to this very day. The Vice Chairman concurrently and independently issued an order directing Appellant to submit to a psychological evaluation. App. at 44-46. It did not suspend Appellant's license pending completion of the evaluation. Appellees issued a formal complaint in July 2014 seeking to revoke Appellant's license after a due process hearing for alleged non-compliance with the Evaluation Order. App. at 190-194. No hearing date has been set by Appellees to adjudicate the formal complaint.

No pre-deprivation notice or hearing of any sort was held regarding the issuance of the TSO. It was signed by Appellee Ralph Roles, a non-lawyer. Its sole factual predicate was an investigator's affidavit and two police reports alleging indecent exposure by Appellant. App. at 42, 47-52. Appellant had been released on personal recognizance, and the charges were subsequently dismissed by law enforcement. The Vice Chairman concluded that the indecent exposure allegations satisfied the probable cause threshold for an emergency necessitating summarily suspending Appellant's license.

Appellant promptly requested post-deprivation discovery and an evidentiary hearing to challenge the factual predicate of the TSO, a request Appellees ignored. App. at 167-168. Instead, Appellees prescribed a meaningless non-evidentiary hearing on October 30, 2013 before a non-lawyer Hearing Officer for a do over of the Vice Chairman's August 20, 2013 probable cause determination (the "October 30th Hearing"). The Hearing Officer unambiguously explained:

> A hearing as to the merits of an Order of Temporary Suspension is **limited to the information provided to the Board Vice Chairman at the time he signed the Order**, and whether or not there was probable cause to believe that the Respondent was a serious threat to the public health, safety or welfare, and that the public interest imperatively requires that [Plaintiff's] practice be immediately temporarily suspended. Hearing Officer's Recommendation, In the Matter of Gregg Newton Battersby, DC, OIE # 2013-24 (S.C. Dep't of Labor, Licensing, & Regulation, State Bd. of Chiropractic Exam'rs Oct. 31, 2013), App. at 55 (emphasis added).

The hearing transcript at numerous points repeatedly confirms the do over nature of the October 30th Hearing. Transcript of Hearing Regarding Temporary Suspension at 37, 53, 101, In the Matter of Gregg Newton Battersby, DC, OIE # 2013-24 (S.C. Dep't of Labor, Licensing, & Regulation, State Bd. of Chiropractic Exam'rs), App. at 93, 109, 157. That conclusion is further fortified by the Board's refusal to grant Appellant discovery rights on the theory that no new evidence would be considered by the Hearing Officer. E-mail from Kristina Baker, Assistant Gen. Counsel, S.C. Dep't of Labor, Licensing, & Regulation, to Bruce Fein, Plaintiff's Counsel (Sept. 3, 2013), App. at 165. And none was.

The Hearing Officer recommended that the Board affirm the indefinite summary suspension of Appellant's chiropractic license. App. at 55. The Hearing Officer also recommended that the Board reinstate Appellant if he complied with the August 20, 2013 order for a psychological evaluation. App. at 55.

Appellant immediately filed a motion to dismiss the TSO because of Appellees' failure to provide a post-deprivation evidentiary hearing to contest its factual predicate without appreciable delay, *the exact same federal claim that Appellant later filed in the United States District Court.* App. at 171. In the alternative, Appellant requested an evidentiary hearing to be held on November 15, 2013 without further discovery. App. at 171-72.

The Board refused to take any action whatsoever based on the Hearing Officer's recommendation or Appellant's motion. It refused to pass on Appellant's constitutional challenge to the TSO. It refused to pass on Appellant's request for a November 15, 2013 post-deprivation evidentiary hearing. The Board declined to do anything in response to the Hearing Officer's recommendation and Appellant's motion. The TSO thus remained undisturbed. It continues more than fourteen (14) months after its issuance and Appellant is still denied an opportunity to challenge its factual predicate in an evidentiary hearing.

Appellant was informed orally by an attorney for the Board after the October 30th Hearing that it had yet to decide whether a formal complaint seeking

permanent revocation of Appellant's license would ever be filed. No regulation or statute requires a formal complaint to follow a TSO.

With no final Board order or ability to appeal the Board's refusal to act on Appellant's motion challenging the constitutionality of the TSO within the state judicial system, Appellant filed this lawsuit on March 7, 2014, over 200 days after the TSO was issued. The complaint alleged a violation of Appellant's procedural due process rights by Appellees' refusal to conduct a prompt post-deprivation evidentiary hearing to enable a challenge to the factual predicate of the TSO. App. at 16. The complaint echoed the Appellant's claim previously submitted to Appellees following the October 30th Hearing, but which Appellees have refused to address. The prayer for relief sought an injunction dismissing the TSO, expunging it from Appellant's disciplinary record, and reinstating his license pending any future adverse action; a declaratory judgment that Appellees had violated Appellant's constitutional procedural due process rights by refusing to provide him a prompt post-deprivation evidentiary hearing; and damages, subject to Appellees' good faith defense, based on the TSO's destruction of Appellant's professional career and reputation. App. at 17.

Appellees' asserted a quasi-judicial absolute immunity defense and the *Younger v. Harris* abstention doctrine (failure to exhaust administrative remedies). App. at 23. Cross motions for summary judgment were filed. The District Court

5

denied Appellant's request for oral argument and granted Appellees' motion for summary judgment on both grounds a week after the close of briefing. Battersby v. Carew, C.A. No. 8:14-761-HMH (D. S.C. Aug. 28, 2014), App. at 38.

Many months after Appellant's complaint was filed in the District Court, Appellees filed a formal complaint against Appellant on July 2, 2014, over 300 days after the issuance of the TSO, and after the criminal charges that were the exclusive factual predicate of the TSO had been dismissed by law enforcement on April 24, 2014. The formal complaint proceeding, however, affords no opportunity for Appellant to litigate his federal procedural due process claim which, in any event, had been previously presented to Appellees following the October 30th Hearing and ignored. No date has been set to adjudicate the formal complaint, and the procedural invalidity of the TSO is not a defense to Appellees charges.

### III.   ISSUES PRESENTED

1) Whether the District Court wrongfully concluded that Appellees were entitled to absolute immunity from damages liability based on their clear violation of procedural due process by refusing to hold a post-deprivation evidentiary hearing to permit Appellant to contest the factual predicate of the TSO.

2) Whether the District Court erred in declining to grant Appellant's motion for summary judgment as to damages liability, injunctive, and declaratory relief based upon Appellees' flagrant violation of procedural due process by refusing to hold a post-deprivation evidentiary hearing to permit Appellant to contest the factual predicate of the TSO.

3) Whether the District Court erred in holding that the *Younger v. Harris* federal abstention doctrine applied to deny Appellant declaratory and injunctive relief despite the absence of any opportunity of Appellant to have his federal procedural due process claim regarding the TSO adjudicated in any pending state administrative proceeding or on appeal both at the time his complaint was filed in federal court and after Appellees' formal complaint was filed.

# IV.   SUMMARY OF ARGUMENT

The District Court erred in granting absolute immunity from damages liability for Appellees' unconstitutional nonfeasance in failing to hold a post-deprivation evidentiary hearing to permit Appellant to contest the factual predicate of the TSO.  The District Court's absolute immunity analysis was flawed, including a stark mischaracterization of the non-evidentiary October 30th Hearing that proved ornamental only.  Appellees' refusal ever to hold an evidentiary hearing to adjudicate Appellant's federal claim is not something judges customarily do.  Judges ordinarily decide issues, not evade them in perpetuity.

Appellees are also not entitled to qualified immunity because no person in their position could have a reasonable belief that their refusal ever to hold a post-deprivation evidentiary hearing to permit Appellant to contest the predicate of their TSO satisfied procedural due process.  Appellees' refusal continues to this very moment.  This violation of procedural due process is clearly established by *Matthews v. Eldridge* and its progeny.

If the Board simply complies like other licensing boards with South Carolina's Code of Laws setting forth time periods for post-deprivation hearings, Appellees will not be burdened by procedural due process lawsuits.

The District Court further stumbled by asserting that *Younger v. Harris* required abstention from adjudicating Appellant's federal claim because of

Appellees' belated initiation of a formal state administrative complaint which was neither pending nor scheduled for adjudication when Appellant's federal complaint was filed. In any event, Appellees' formal complaint proceeding *presents no opportunity to adjudicate Appellant's federal claims which were before the District Court either directly or on appeal within the state court system*, a prerequisite of *Younger v. Harris* abstention. The formal complaint was issued without a hearing date, and none has been set. And there is nothing to prevent Appellees from unilaterally dismissing its formal complaint tomorrow without prejudice to scuttle any hypothetical opportunity for Appellant to press his federal challenge to the TSO. And assuming the Board eventually decides to hold a hearing to adjudicate the formal complaint and issues a final order, Appellant still could not inject a constitutional attack on the TSO directly or on appeal within the state court system because its procedural invalidity is not a defense to a revocation of Appellant's license after a due process hearing.

The District Court's ruling would endow the Board with limitless authority to suspend professional licenses forever without permitting the licensee a post-deprivation evidentiary hearing to challenge the factual predicate of the license suspension. Based on the District Court's rationale, a lawyer could be summarily suspended forever from the practice of law and his career and reputation destroyed based on allegations made by clients of sexual harassment or assault which he had

no opportunity to contest in an evidentiary hearing.

The District Court's decision additionally empowers Appellees to manipulate federal jurisdiction to defeat federal procedural due process claims attacking TSOs. Consider the following strategy. Appellees refuse to entertain the federal claim and force the suspended licensee to file his federal claim in federal court at considerable expense. Appellees wait an additional few months forcing the federal plaintiff to exhaust money and resources skirmishing in federal court. Then Appellees file a formal complaint against the federal plaintiff based on the same or similar facts underlying the TSO. Then the federal court dismisses the federal claim attacking the TSO based on the District Court's Younger v. Harris precedent. Then Appellees unilaterally dismiss their own formal complaint without prejudice or allow the formal complaint to remain idle without a decision on the merits while leaving the TSO undisturbed. In this way, the District Court's decision enables Appellees to suspend licenses in perpetuity through the issuance of TSOs without ever holding an evidentiary hearing, leaving victims of unconstitutional TSOs without a remedy.

In sum, all relevant considerations of law, justice, and fact dictate reversing the summary judgment order of the District Court and the entry of summary judgment in favor of Appellant.

# V.    ARGUMENT

A. STANDARD OF REVIEW

The Court of Appeals reviews district court orders granting or denying motions for summary judgment *de novo*.  Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).  *See also* Walker v. Prince George's County, Md., 575 F.3d 426 (4th Cir. 2009) (reviewing *de novo* the appeal of a grant of summary judgment based on qualified immunity to Appellants' 42 U.S.C. § 1983 claim).  The facts should be viewed in the light most favorable to Appellant as the nonmoving party.  Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997).

B. APPELLEES WERE NOT ACTING IN A QUASI-JUDICIAL CAPACITY BY INDEFINITELY SUSPENDING APPELLANT'S CHIROPRATIC LICENSE AND REFUSING TO PROVIDE HIM A POST-DEPRIVATION EVIDENTIARY HEARING AT ANY TIME TO CONTEST THE FACTUAL PREDICATE OF THE TSO.

The District Court held that Appellees were entitled to absolute immunity from suit because they were performing quasi-judicial functions in refusing to hold a post-deprivation evidentiary hearing to permit Appellant to contest the factual predicate of the indefinite TSO.  App. at 38.  Refusing to decide an issue is not something judges ordinarily do.  They ordinarily decide cases — not evade them.  That is their job.  Appellees were not performing a judicial function by refusing to set any date whatsoever for an evidentiary hearing to enable Appellant to challenge

the TSO and by refusing to entertain a constitutional challenge to their dereliction of constitutional duty.

The Supreme Court has instructed that absolute immunity is disfavored because it would allow violations of clearly established constitutional rights to be irremediable. Appellees should be entitled only to qualified immunity from damages liability, which requires proof that they reasonably believed their unconstitutional nonfeasance was legal.

1.    *Absolute Immunity for Government Officials from Damages Liability*

As a general rule, executive officials charged with constitutional violations should not have absolute immunity from damages liability. Butz v. Economou, 438 U.S. 478, 508 (1978). The presumption is that qualified immunity is sufficient to protect government officials in the robust discharge of their duties. Burns v. Reed, 500 U.S. 478, 486-87 (1991). Absolute immunity should only be extended in those exceptional situations where it is essential for the conduct of public business. *Butz* at 507. Absolute immunity from damages is disfavored because injunctive or declaratory relief may be useless to an individual already injured by a violation of his constitutional rights and would not effectively deter officials from repeating constitutional wrongs. *Id.* at 504-06.

The Supreme Court has been cautious in recognizing claims that government officials should be free of the obligation to answer for their acts in court because

the threat of liability can have salutary effects while qualified immunity still offers protection when the law is foggy. Forrester v. White, 484 U.S. 219, 223-24 (1988). Officials who seek absolute immunity from personal liability for unconstitutional conduct bear the burden of showing that public policy justifies it. *Id.* at 224. Immunity should benefit the public, not just the individual concerned. Pierson v. Ray, 386 U.S. 547, 554 (1967).

The *Butz* Court recognized several classes of individuals entitled to absolute immunity. Foremost are judicial officers and, by extension, other individuals involved in the justice system such as prosecutors, grand jurors, and witnesses. 438 U.S. at 509-10. The Court was concerned that qualified immunity would have an adverse effect on the functioning of the justice system by discouraging the initiation of prosecutions and, in particular, the conducting of the trial itself. *Id.* The extension of absolute immunity then stems from the characteristics of the judicial process and not the official positions of the government actors. *Id.* at 512. The analysis must focus not on the "title or status in the bureaucratic hierarchy of the officer concerned but on whether *the officer's action complained of* involved 'performance of a judicial or quasi-judicial function.'" Ward v. Johnson, 690 F.2d 1098, 1105 (4th Cir. 1982) (emphasis added).

Analysis of whether absolute immunity attaches to government actors who violate constitutional rights must focus on the nature of the function that

occasioned the violation of those rights, not on the identity of the actor who violated them. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). Accordingly, absolute immunity would not attach to purely administrative or investigatory actions or proceedings denuded of the customary trappings of a court and the signature procedural safeguards available in the judicial process. *Ward* at 1105.

In determining whether absolute immunity attaches to challenged misfeasance or nonfeasance, relevant considerations include whether the challenged action consists of 1) an adversarial proceeding; 2) an adjudicatory officer insulated from supervision or direction of those engaged in investigative or prosecutorial duties; 3) an opportunity to present relevant oral or written evidence by the adversely affected party; 4) a record of the proceedings, which in turn constitutes the exclusive record for decision; 5) an adjudicatory officer assured of independent judgment on the record before him; 6) a proceeding which presents a danger of a retaliatory response by the disappointed party to an adverse decision; and 7) the ability to correct errors via an appeals process. *Ward* at 1105-06.

Parties should ordinarily enjoy the ability to cross-examine witnesses in order to enhance the reliability of information and impartiality of the decision-making process. *Butz*, 438 U.S. at 512. Additionally, the Supreme Court has generally declined to extend absolute immunity to officials who are not professional hearing officers or otherwise trained in the law. Cleavenger v. Saxner,

474 U.S. 193, 203-04 (1985).  These safeguards distinguish a "formal" proceeding from an "informal" one, and determine whether absolute immunity should attach to the official's actions.  *Ward*, 690 F.2d at 1105.

While this Court held that the proceeding in *Ward* had sufficient safeguards to justify extending absolute immunity to the agency official's actions, it emphasized that its decision may "be different if the plaintiff had been denied absolutely any 'adversary' hearing or if he had been denied any notice of the charge against him, or if he had been denied the right to confront and cross-examine his accusers at the . . . hearing."  *Id.* at 1108.  All three of this Court's reservations are this case.  Appellant had no notice of the TSO.  He has had no adversarial evidentiary hearing to contest the TSO.  And Appellant has had no opportunity to confront or cross-examine his accusers.  Indeed, Appellant has never had an evidentiary hearing of any kind at all.

This Court has also held that when an individual has no means of challenging a sanction before a formal charge of disciplinary violations, there are insufficient procedural safeguards to justify extending absolute immunity. Goldstein v. Moatz, 364 F.3d 205, 217 (4th Cir. 2004).  As a formal charge may never happen, a speculative opportunity to challenge is insufficient to protect an individual's rights.  *Id.* at 218.  In such a situation, a private lawsuit may be the only limitation on constitutional abuses, which makes it all the more important to

15

deny absolute immunity to the officials involved. *Id.* at 219. Other district courts have specifically held that quasi-judicial immunity does not attach when an individual is not provided adequate notice of a hearing because this failure is an act outside of a structured adversarial hearing, and in fact denies the plaintiff the proceeding required by *Butz*. Coles v. Levine, 561 F.Supp 146, 149-50 (D. Md. 1983). The U.S. Court of Appeals for the Third Circuit has refused to extend absolute immunity to prosecutors when they fail to formally charge an individual with a crime, leaving the individual unable to seek redress for the alleged wrongful conduct other than through a 42 U.S.C. § 1983 lawsuit. Giuffre v. Bissell, 31 F.3d 1241, 1254 (3rd Cir. 1994). There would be no safeguards to restrain misconduct if absolute immunity were extended to such circumstances. *Id.* The U.S. Court of Appeals for the Sixth Circuit has also refused to extend absolute immunity to medical licensing boards when they failed to initiate disciplinary proceedings promptly, holding that public policy considerations do not justify absolute immunity in such cases. Manion v. Mich. Bd. of Medicine, 765 F.2d 590, 594-96 (6th Cir. 1985).

The District Court relied upon *Richter v. Conner*, *Thompson v. Duke*, and *Pate v. United States* for its conclusion that Appellees were entitled to absolute immunity. App. at 34. However, it neglected key distinguishing facts from controlling precedents. First, both *Pate* and *Thompson* involved prisoners alleging

a procedural due process violation over the failure to hold timely parole revocation and disciplinary hearings. The Supreme Court has repeatedly noted that the procedural due process rights of prisoners compared to ordinary citizens are necessarily subject to restrictions and diminishment because of the nature of prison confinement. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). As all absolute immunity determinations are public policy balancing tests, determinations in the criminal justice context will necessarily weigh more towards extending absolute immunity because of the circumscribed procedural due process rights of prisoners.

In *Pate*, a prisoner sued over the failure to hold a timely parole revocation hearing. Pate v. United States, 277 F.Supp.2d 1, 2 (D.D.C. 2003). The plaintiff had spent almost one year in prison without a parole revocation hearing. *Id.* at 3. In an unusual situation, the responsibility to provide the plaintiff with his hearing passed from one governmental entity to another after 65 days and yet the defendant sued only individual officers of the first entity. *Id.* The first entity (the District of Columbia Parole Board) had in fact repeatedly scheduled a parole revocation hearing for the plaintiff, the first less than a month after it became required. *Id.* In each case, the D.C. Parole Board continued the hearing due to the unavailability of witnesses. *Id.*

Scheduling or postponing hearings because of crowded dockets or otherwise is something judges customarily do. But Appellant's case is different. Appellees

17

have never scheduled and never intend to schedule a post-deprivation evidentiary hearing to enable Appellant to contest the factual predicate of the TSO.  Judges do not customarily refuse to decide claims.  Additionally, the *Pate* court noted that it was significant that the plaintiff had only sued officials of the first entity and not the second entity responsible for providing him a parole revocation hearing (the United States Parole Commission).  *Pate* at 3.

*Thompson*, like *Pate*, also involved a delayed parole revocation hearing.  In that case, plaintiff had been arrested for burglary and a parole revocation hearing was scheduled for the day after the conclusion of his trial on the burglary charge. Thompson v. Duke, 882 F.2d 1180, 1181 (7th Cir. 1989).  For unknown reasons, this hearing was delayed, and the plaintiff was assaulted by a fellow prisoner three days later.  *Id.*  Plaintiff claimed his procedural due process rights had been violated by a failure to provide a prompt hearing.  *Id.*  The United States Court of Appeals for the Seventh Circuit held the state official defendants had absolute immunity because scheduling a parole violation hearing is a quasi-judicial act.  *Id.* at 1184.  Distinct from this case, in *Thompson* the Defendants in fact scheduled a hearing, with the lawsuit centered around the delay in actually holding it, and in no way could the total elapsed time be considered a procedural due process violation. In this case, Appellant has never received a post-deprivation evidentiary hearing to contest the TSO and none has been scheduled.  Appellees' belated formal

18

complaint does not put the issue of Appellant's federal due process attack on the TSO into play, and Appellees have yet to schedule a hearing to adjudicate the formal complaint. App. at 190-94. A procedurally flawed TSO is no defense to a license revocation after a formal due process hearing.

While the plaintiff in *Richter* was a medical professional who sued the state licensing board for procedural due process violations, unlike in this case she had received a hearing on the merits and had received only a public reprimand, not a suspension of her license. Richter v. Conner, No. 93-1433, 1994 WL 118011, at *1 (4th Cir. Apr. 8, 1994) (unpublished). The plaintiff argued that the board was not entitled to absolute immunity because the hearing's procedural safeguards were inadequate and that the board improperly encroached on prosecutorial and investigatory functions. *Id.* at *4-5. These are very different actions than the issue in this case in which no evidentiary hearing was ever held or even scheduled. The Supreme Court has condoned extending absolute immunity when it seeks to preserve the administration of hearings and the independence of judgment within them, issues of much more concern in *Richter* where the plaintiff's claim is explicitly based on decisions made within a hearing. Such concerns are not justified in the absence of an actual hearing. Each extension of absolute immunity is a balancing test of public policy goals, which is why the specific action at issue must be the focus of analysis.

19

In this case, Appellees' refusal to act is exactly the type of nonfeasance that counsels against extending absolute immunity. All factors of the *Butz* test, as delineated by this Court in *Ward*, counsel towards extending Appellees only qualified immunity in order to advance the important public policy goal of vindicating procedural due process:

*Adversarial Proceeding*: At no time has Appellant been provided an adversarial proceeding to confront or present evidence relevant to the TSO license suspension. It rested and continues to rest solely on two police reports and an investigator's affidavit that Appellant has never been permitted to challenge in a post-deprivation evidentiary hearing. App. at 42-43, 174. Appellant asked for an evidentiary hearing on November 15, 2013, generously accepting an absence of customary discovery, and yet the Board has not acted on the request even after a lapse of one year. App. at 188-89. Appellees did not revisit their TSO after law enforcement dismissed the criminal charges against Appellant in June 2014, charges which were the entire foundation of their August 20, 2013 summary order.

*An Adjudicative Officer Free from Investigative or Prosecutorial Supervision*: Appellant has not been provided a post-deprivation evidentiary hearing before an arbiter. To the extent any officer could be the subject of this factor, it was the Vice Chairman when he issued the TSO and Appellees when they refused to re-examine the TSO. Both combined all three roles, prosecutorial, investigative, and

adjudicative, in initiating the TSO process, obtaining solely the two police reports and an investigator's affidavit as evidence and then issuing and continuing the TSO itself. The combination of investigation, prosecution, and adjudication is the opposite of impartiality.

*The Right to Enter Evidence on One's Behalf*:  The District Court misunderstood the October 30th Hearing in this regard, a hearing in which no evidence was admissible beyond what was before the Vice Chairman on August 20, 2013, and was ornamental in any event because the Board has never acted on the Hearing Officer's recommendation or Appellant's motion.  Appellant has never had a post-deprivation opportunity whatsoever for an evidentiary hearing to contest the predicate of the TSO.  Even the belated formal complaint against Appellant seeking permanent revocation of his license does not provide an opportunity for an evidentiary hearing to challenge the TSO as factually unsupportable.  App. at 191-94.  The due process invalidity of the TSO is not a defense to the formal charges much as an illegal arrest is not a defense to a prosecution.  INS v. Lopez-Mendosa, 438 U.S. 1032 (1984).  Appellant cannot plead it as a defense before the Board, and there would be no opportunity to inject it into an appeal from a final Board order within the state court system because even if the TSO were unconstitutional, that would not void the Board's disciplinary action imposed after a hearing that satisfied due process.

*Transcript of the Proceeding, Forming the Exclusive Basis for the Decision*:  To belabor the point, there has never been a post-deprivation evidentiary hearing so there is no transcript to lend support to the TSO.  All that is available are the unsubstantiated allegations before the Vice Chairman on August 20, 2013.

*Independent Judgment by the Arbiter*:  The Vice Chairman issued the TSO and the Board has chosen not to re-examine the issue despite the Hearing Officer's recommendation.  Appellees have done nothing to disturb it.  The Vice Chairman was not impartial, but part of the prosecution biased against Appellant.

*Prevention of Retaliatory Response*:  The Court need not be concerned about a crush of litigation if the Board simply institutes a policy of prompt post-deprivation evidentiary hearings following issuance of TSOs.  It is thankfully a *rara avis* for a licensing board to summarily suspend a license but never provide any opportunity—ever—for an evidentiary hearing to enable the licensee to contest the factual predicate of the summary suspension.

*Reasonable Opportunity to Appeal*:  There was no procedure to permit Appellant an opportunity to appeal Appellees' unconstitutional nonfeasance in refusing to ever schedule an evidentiary hearing to contest the factual predicate of the TSO or even re-examine the Vice Chairman's TSO decision.

Appellees' ultra-tardy formal complaint provides no opportunity whatsoever for Appellant to remedy the injuries already inflicted because of the procedural due

process infirmity in Appellees' issuance of the TSO with no post-deprivation evidentiary hearing as to its factual adequacy. If Appellant's defense to the formal complaint is successful, he will still have suffered professional and personal damages from the year-plus "temporary" suspension of his license. And even if Appellees prevail in their formal complaint, that would not exonerate them from their procedural due process violation in issuing the TSO without offering Appellant a post-deprivation evidentiary hearing to enable a challenge to its factual predicate. Similarly, a successful prosecution does not exonerate an illegal arrest of the accused, and a wrongful arrest or detention will not block a subsequent prosecution. *See* INS v. Lopez-Mendoza, 438 U.S. 1032.

## 2.    *Absolute Immunity for Government Officials from Equitable Relief*

It is well settled that absolute immunity does not prevent a plaintiff from obtaining declaratory or injunctive relief. Pulliam v. Allen, 466 U.S. 522, 536-537 (1984); Wood v. Strickland, 420 U.S. 308, 314 n.6 (1975); Timmerman v. Brown, 528 F.2d 811, 813-814 (4th Cir. 1975). As such, Appellant's claims for declaratory and injunctive relief are not subject to dismissal based upon absolute immunity.

C. APPELLEES ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THE CONSTITUTION CLEARLY REQUIRES A PROMPT POST-DEPRIVATION EVIDENTIARY HEARING WHEN A PROFESSIONAL LICENSE IS SUSPENDED AND NO REASONABLE PERSON COULD BELIEVE THAT APPELLEES' REFUSAL TO HOLD A POST-DEPRIVATION

EVIDENTIARY HEARING—EVER—TO ENABLE APPELLANT TO CONTEST THE FACTUAL PREDICATE OF THE TSO SATISFIED PROCEDURAL DUE PROCESS.

Appellees should not be granted immunity from damages liability for violating Appellant's constitutional rights under the Supreme Court's qualified immunity test as the relevant procedural due process requirements are unequivocal. A professional license is quite clearly a property interest under the Fourteenth Amendment, and so commands attendant due process protections. If a licensing board suspends a professional license, the licensee must be given either a pre-deprivation or prompt post-deprivation hearing. Such hearing must incorporate procedural safeguards in order to ensure the suspension is done with cause. To date, over one year since the issuance of the TSO, at no point has Appellant been provided an evidentiary hearing with these constitutionally required safeguards, either prior to or after the suspension of his license. Even without a bright-line rule as to what is a sufficiently "prompt" hearing under the Fourteenth Amendment, no reasonable person could believe that a delay as far as the eye can see is consistent with constitutionally-required procedural due process. No decision by any court even hints at such a jarring conclusion.

As a general rule, executive officials charged with constitutional violations should have qualified immunity from damages liability. *Butz* at 508. This is the norm. Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). Under the qualified

immunity test, officials first must be acting within the scope of their official responsibility. *Id.* at 815. If the official is so acting, then they will be immune from civil suit unless they knew or reasonably should have known that the action they took or omitted to take would violate the constitutional rights of the plaintiff. *Id.* The latter analysis consists of two parts. First, the official must have violated a constitutional right of the plaintiff. Wilson v. Layne, 526 U.S. 603, 614 (1999). If he has, then the violated constitutional right must have been clearly established. *Id.* The qualified immunity test is designed to further the public interest in deterring unlawful conduct and compensating victims of official misconduct. *Harlow* at 819.

Appellees have violated Appellant's constitutional rights by summarily suspending his chiropractic license without providing him a post-deprivation evidentiary hearing by which he might contest the factual predicate for the summary suspension. The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has clearly established that a professional license is considered property under the Fourteenth Amendment when state law has "engendered a clear expectation of continued enjoyment of a license absent proof of culpable conduct by the [holder]" and as such the licensee is entitled to due process protections. Barry v. Barchi, 443 U.S. 55, 64 (1979). *See*

*also* FDIC v. Mallen, 486 U.S. 230, 240 (1988). Due process requires a state to provide the property owner a hearing prior to the deprivation of property or, under certain emergency conditions, a post-deprivation hearing by which to assess the propriety of the state's action. Parratt v. Taylor, 451 U.S. 527, 539 (1981). Even in cases where emergency circumstances permit taking a property interest without a prior full pre-deprivation hearing, the Court has still generally required that the individual be given notice of the charges against him, an explanation of the evidence, and an opportunity to present his side of the story, even if formal procedures such as confronting and cross-examining witnesses are not necessary. *See* Brock v. Roadway Express, Inc., 481 U.S. 252, 264-65 (1987).

While the Supreme Court has not set a bright-line time period by which a post-deprivation hearing must occur, it has put forth several factors to be considered in determining whether procedural due process has been satisfied. First, a court should examine the importance of the private interest at stake and the harm to this interest that may be occasioned by any delay in holding the hearing. *FDIC v. Mallen*, 486 U.S. at 242. The Supreme Court has repeatedly recognized the severity of depriving an individual of a livelihood, since although they may find work elsewhere, doing so will take time and is likely to be burdened by the circumstances under which he left his previous job. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 543 (1985). Second, the court should consider any

justification offered by the government for the delay and its relation to the underlying governmental interest in taking the property. *FDIC v. Mallen* at 242. Finally, the court should consider the likelihood that the interim decision may have been mistaken, with a higher likelihood of erroneous decisions counseling towards a prompter post-deprivation hearing. *Id.*

The Fourteenth Amendment's due-process-required hearing may itself take a multitude of forms but must still meet minimum standards. The deprivation hearing must be preceded by notice of the charges or issue, the hearing must be meaningful, and the hearing must have an impartial decision-maker. *See, e.g.*, Mullhane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950); Goldberg v. Kelly, 397 U.S. 254 (1970); Gibson v. Berryhill, 411 U.S. 564 (1973). The administrative procedures necessary to satisfy these requirements are subject to a balancing test. As the Court set forth in *Mathews v. Eldridge*, the factors to be balanced include "the private interest that will be affected by the official action . . . the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. 319, 335 (1976). The ordinary principle is that individuals should be given an evidentiary hearing prior to depriving them of

their property through adverse administrative action. *Id.* at 343. In situations where "a wide variety of information may be deemed relevant, and issues of witness credibility and veracity often are critical to the decision-making process," written submissions of evidence are a wholly unsatisfactory basis for decision. *Id.* at 343-44. In some cases, due process considerations require that individuals in administrative hearings not only have the ability to present witnesses but also to compel them to testify if needed. It exceeds the boundaries of constitutional fairness to restrict witnesses only to those who would appear voluntarily and preclude those who refuse to testify. Dalton v. Hutto, 713 F.2d 75, 77-78 (4th Cir. 1983). Such a construction renders the right to call witnesses meaningless. *Id.* at 78. Additionally, the property owner should generally be provided an opportunity to submit additional evidence or arguments, enabling him to challenge directly the accuracy of information as well as the correctness of the agency's conclusions. *Mathews* at 345-46. The Court also counseled that the hardship a deprivation causes is a factor to be considered in assessing the validity of administrative decision-making processes. *Id.* at 341. The greater the deprivation an individual might suffer, the more an evidentiary hearing should resemble the regular legal process.

Appellees have clearly violated Appellant's procedural due process rights. Even assuming the allegations against Appellant (later dismissed by law

enforcement) were of a sufficiently emergency nature as to justify suspending his license without an evidentiary hearing, procedural due process still requires he be given notice.  In this case, he was not aware of the TSO until after it was already issued.  He was not given an opportunity to view the evidence against him and present his own side of the story until the October 30th Hearing.  App. at 42-44.  And even that hearing was hollow.  The Hearing Officer considered no new evidence. App. at 55.  While he nevertheless made a recommendation to the Board, it has failed to consider the recommendation.

Since the issuance of the TSO, Appellees have completely failed to provide Appellant the constitutionally demanded post-deprivation evidentiary hearing to challenge the TSO's factual predicate.   Applying the *Mathews* test reveals this infinite delay is completely irreconcilable with procedural due process requirements:

*Private Interest Affected:*  The suspension of his license has left Appellant unable to practice in South Carolina or in any other jurisdiction since August 20, 2013, as other states will not grant him a license in their locales while his South Carolina license is suspended.  This has caused crippling financial hardship to Plaintiff in addition to the damage to his professional reputation, which compounds daily.

*Risk of Erroneous Deprivation and Value of Additional Safeguards:*   Appellant was not given notice of any kind prior to the issuance of the TSO.  He was not able

to view the evidence against him, submit his own evidence, or challenge the credibility of the witnesses against him (none of whom were questioned by the Board). App. at 42-44. He was not present when the TSO was issued because of a lack of notice. Since the issuance of the TSO, he has not been provided an opportunity to challenge its factual predicate. At present, the expected delay is infinite because Appellees have refused to set any date or forum in which Appellant will enjoy an evidentiary hearing in which the factual validity of the TSO is at issue. Moreover, Board members, including the Vice Chairman, are not lawyers, and the likelihood of misapplying the facts to the law is consequently higher than if a proceeding were adjudicated by a lawyer or other trained legal professional. In general, these procedures create a high likelihood of erroneous summary license suspensions, which seems evident here. After the TSO was issued, the criminal charges of indecent exposure that constituted its factual predicate were dismissed. App. at 202-203. Appellees, however, declined to revisit their TSO.

*Burden of Additional Safeguards on the Government:* The likelihood of Board error also counsels towards a prompt post-deprivation hearing, yet it has been over one year since the TSO was issued and no evidentiary hearing has been scheduled. Appellees have not proffered any reasons for their infinite delay in providing a post-deprivation evidentiary hearing. Appellees have not pled a lack of

30

investigative resources or a crowded administrative docket. They have been completely mute on the matter. Other licensing boards, both within South Carolina and in other states, are thoroughly capable of providing such hearings in a time period consistent with procedural due process requirements. In fact, the South Carolina Code of Laws tracks constitutional requirements and Supreme Court precedents almost exactly. It requires proper notice and an opportunity to respond to emergency suspension orders like the TSO, but which in this case Appellees did not provide. S.C. Code Ann. § 1-23-370(c). Post-suspension hearings are required, with all parties afforded notice, the ability to take depositions and gather other evidence, and any findings based exclusively on evidence adduced at the hearing. S.C. Code Ann. § 1-23-320. The Board itself has issued regulations to this effect for formal complaints and board hearings. S.C. Reg. § 25-9. It is a minimal burden, at most, for the Board to comply with its own regulations, particularly when Appellees have not provided any justifications for their flagrant disregard.

In this case, it is clear then that Appellees have not satisfied the Fourteenth Amendment's procedural due process requirements and have thus violated Appellant's constitutional rights. Appellees have failed to provide Appellant the evidentiary hearing the Constitution requires either prior to or after the suspension of his license. To date, the only "hearing" he has been provided was a non-

evidentiary ornamental hearing on October 30, 2013 consisting of a pro forma do over of the Vice Chairman's August 20, 2013 summary suspension order based solely on two police reports and an investigator's affidavit. No new evidence was admissible and Appellant had no opportunity to discredit the allegations that constituted the factual predicate of the TSO. App. at 54-55. He never has. In addition, while the Hearing Officer made a recommendation to the Board, it has never acted on it despite Appellant's motion to dismiss or hold an evidentiary hearing. The recommendation and Appellant's motion remain in limbo one year later.

Even without a bright-line rule as to the promptness due process requires, no reasonable person could believe that the Board's infinite delay in holding a post-deprivation evidentiary hearing to contest the TSOs' predicate facts was or is constitutional. The Supreme Court in *Barry v. Barchi* held a regulation with just such an open-ended post-deprivation timeline to violate procedural due process. 443 U.S. at 66.

The unexplained infinite delay in providing Appellant his constitutionally required post-deprivation evidentiary hearing to contest the TSO is obviously unconstitutional. While the Board enjoys qualified immunity from civil damages, in this case Appellees fall far short of proving the good faith necessary to avoid

damages liability.  The District Court thus erred in denying Appellant's summary

judgment motion as to damages liability.

D. APPELLANT   WILL  NOT  BE  ABLE  TO  PRESENT  HIS
FEDERAL TSO PROCEDURAL DUE PROCESS CLAIM IN
THE  STATE  ADMINISTRATIVE  PROCEEDING  OR  ON
APPEAL,  WHICH  MAKES  THE  *YOUNGER  V.  HARRIS*
DOCTRINE INAPPLICABLE AND THE DISTRICT COURT 'S
ABSTENTION ERRONEOUS.

The District Court also dismissed Appellant's claim for equitable relief

based on the *Younger v. Harris* federal abstention doctrine.  401 U.S. 37 (1971);

App. at 37.   As with its quasi-judicial absolute immunity holding, the District

Court fundamentally misunderstood the nature of Appellant's claim and Appellees'

belated formal complaint.  The *Younger* abstention doctrine is not applicable in this

case because Appellant's procedural due process attack on the TSO for failure to

hold a post-deprivation hearing without appreciable delay is irrelevant to defending

against Appellees' formal complaint in the same manner as an illegal arrest is not a

defense to a criminal prosecution.  The procedural due process claim is not part of

Appellant's defense and the validity vel non of the TSO plays no role in the

Appellees' formal complaint.   App. at 197-98.   Moreover, Appellant filed his

complaint in federal court when no state proceedings were either pending or

scheduled.  No South Carolina law or regulation mandate the issuance of a formal

complaint after a  TSO, and South Carolina courts lack jurisdiction to entertain an

appeal until such time as an agency makes a final decision on the merits.  And even

if Appellees finally schedule and hold a hearing to adjudicate the formal complaint

and issue a final order, an appeal by Appellant in the state court system would not

permit injecting the constitutionality of the TSO at that stage because its invalidity would not void disciplinary action taken only after a hearing that satisfied due process. Abstention is improper when the federal claim cannot and will not be presented and adjudicated in a pending companion state proceeding or on appeal.

Abstention from the exercise of federal jurisdiction is the exception, not the rule—and exceptions should be narrowly interpreted or applied. Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995), citing Haw. House. Auth. Midkiff, 467 U.S. 229, 236 (1984). Federal courts have a virtually unflagging obligation to exercise the jurisdiction given to them even when Younger abstention is at issue. Deakins v. Monaghan, 484 U.S. 193, 203 (1988). Abstention is only appropriate when 1) there are ongoing state adjudicative proceedings, 2) the proceedings implicate important state interests, and 3) there is an adequate opportunity to raise federal claims in the state proceedings. Martin Marietta Corp. v. Md. Comm'n on Human Relations, 38 F.3d 1392, 1396 (1994); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). In order for a *Younger* abstention to be appropriate, the plaintiff must be able to raise his constitutional claim in the state proceeding, otherwise the federal court should not abstain. Gerstein v. Pugh, 420 U.S. 103, 108 n. 9 (1975). *See also Middlesex County Ethics Comm.* at 435; Juidice v. Vail, 430 U.S. 327, 330 (1977). However, if a state proceeding would not ordinarily address issues such as

plaintiff's claim or where the claim could not be raised as a defense to the state proceeding, abstention is not appropriate. Suggs v. Brannon, 804 F.2d 274, 279-280 (4th Cir. 1986). This includes allowing plaintiff the full array of relief, and if monetary damages or equitable relief, as the case may be, are not available in the state proceeding, the federal court should not abstain even if the state proceeding is capable of ruling on the constitutional claim itself. *Id.*

The District Court relied on *Phillips v. Virginia Bd. of Med.* to conclude that the ongoing state proceeding against Appellant concerns important state interests justifying *Younger* abstention (apparently tracing the beginning of the proceeding to the issuance of the TSO and not the formal complaint). 749 F.Supp. 715 (E.D. Va. 1990); App. at 36. That reliance was misplaced. *Phillips* involved a psychiatrist seeking to enjoin the suspension of her license because she alleged that the decision was unconstitutionally based on her religion. *Id.* at 717. The Virginia Board of Medicine specifically notified the plaintiff of charges that she introduced "inappropriate . . . religious themes and modalities into her psychiatric work . . . [and improperly maintained] simultaneous religious as well as professional relationships with patients." *Id.* As such, the plaintiff's religious beliefs and practices were part and parcel to the state administrative proceeding. The court properly abstained because at the very least, plaintiff's constitutional right to freedom of religion could be raised on appeal to Virginia state courts, if not the

36

administrative hearing, since the disciplinary charges and constitutional right sprang from the same conduct at issue. *Id.* at 723-24. Similar cases abound. This Court has affirmed *Younger* abstentions when medical licensing boards sought the suspension of a physician's license for violating anti-abortion statutes, statutes which the plaintiff-physician alleged were unconstitutional. Simopoulos v. Virginia State Bd. of Medicine, 644 F.2d 321, 321-22 (4th Cir. 1981). Likewise, the Supreme Court in *Middlesex* held that abstention was necessary when an attorney asserted a constitutional right to freedom of speech as a defense to an ethics committee disciplinary hearing based on extrajudicial statements made by the attorney. *Middlesex County Ethics Comm.*, 457 U.S. at 428-29.

The District Court wrongly dismissed Appellant's claims for equitable relief based upon *Younger v. Harris* because of an apparent misunderstanding of the legal and factual issues at play in Appellees' formal complaint. It was initiated months after Appellant filed his federal complaint. Appellees have yet to set a hearing date to adjudicate the formal complaint. Appellant has not pled the unconstitutionality of the TSO as a defense because it is not. App. at 196-98. It would not be a defense on appeal from a final order of the Board if and when it is forthcoming. The violation of Appellant's procedural due process rights in Appellees' issuing and continuing indefinitely the TSO is not relevant to the adjudication of the formal complaint, just as proving an illegal arrest is no defense

to a sequel criminal prosecution and conviction beyond a reasonable doubt. The validity of the TSO is not an element of Appellees case seeking permanent revocation of Appellant's license. App. at 191-94. And while some of the relief Appellant seeks, the dismissal and expungement of the TSO from his disciplinary record and reinstatement of his license, *may* result if he is successful on the merits in defending against the formal complaint, monetary damages are still not available. South Carolina law does not allow an aggrieved party to seek monetary damages under the state's Administrative Procedures Act absent an express provision recognizing such a claim. Marietta Garage v. Dep't of Pub. Safety, 352 S.C. 95, 100 (S.C. Ct. App. 2002).

Appellant's situation is closer to that of the plaintiff in *Gerstein* than to *Phillips*, notwithstanding that the former involved a criminal proceeding while the latter a professional licensing board. Appellant's constitutional right to procedural due process in conjunction with the TSO has been violated. Appellees' formal disciplinary proceedings against him raise legal and factual issues distinct from the procedural infirmity that taints the TSO. The predicate for *Younger v. Harris* is missing here because Appellant's federal claims and corresponding requests for relief cannot be presented for adjudication in the ongoing state disciplinary action or on appeal from any final Board order of discipline after a due process hearing.

Additionally, Appellant had no recourse in state courts at the time he filed

his federal complaint, and may never have recourse. The South Carolina Administrative Procedure Act limits judicial review to parties aggrieved by final decisions in contested cases. S.C. Code Ann. § 1-23-380(A). A party is not entitled to judicial review of an agency decision that does not decide the merits of the case. S.C. Baptist Hosp. v. S.C. Dep't of Health & Envt'l Control, 291 S.C. 267, 270 (S.C. 1987). The South Carolina Supreme Court has interpreted this "final decision" requirement for judicial review very strictly. In order to obtain judicial review, there must be a decision that "finally disposes of the whole subject matter of the action or terminates the action, leaving nothing to be done but to execute the judgment. Bone v. U.S. Food Serv., 744 S.C. 67, 93 (S.C. 2013). Because Appellees have flaunted procedural due process by never providing Appellant with an evidentiary hearing let alone a final decision arising from one, Appellant cannot seek judicial review in the South Carolina courts. As noted, *Younger v. Harris* requires that a party have an adequate opportunity to raise his federal claims in the state proceedings, something sadly missing in this case.

If the District Court's abstention ruling is sustained, enormous inequities to federal plaintiff's with due process claims or otherwise are risked. The chronology of Appellant's case nicely illustrates how the District Court's decision has permitted Appellees to destroy Appellant's professional career based on a TSO whose factual predicate he has never had an opportunity to challenge:

1.  Appellees issue a TSO without notice or hearing suspending Appellant's license indefinitely on August 20, 2013 based on unsubstantiated allegations.

2.  Appellant's ability to earn a living immediately ends.

3.  Appellant expends time and resources to challenge the constitutionality of the TSO for failure of due process before the Board.

4.  A Hearing Officer holds a do over, ornamental hearing on October 30, 2013 to re-examine the August 20, 2013 TSO and makes a recommendation to the Board on October 31, 2013.

5.  Appellant files a motion with the Board challenging the constitutionality of the TSO and asking for dismissal or an evidentiary hearing on November 15, 2013.

6.  The Board refuses to consider the Hearing Officer's recommendation and Appellant's motion.

7.  Appellant files federal due process complaint in federal court on March 7, 2014.

8.  Law enforcement dismisses the criminal charges that provoked the TSO on June 17, 2014.

8.  Appellees initiate a formal complaint on July 2, 2014 but sets no hearing date.  Appellees provide no assurance that a hearing will ever be held for Appellant.  The invalidity of the TSO is no defense to the formal complaint.

40

9. District Court dismisses Appellant's federal claim based on *Younger v. Harris* abstention doctrine on Aug. 28, 2014 by concluding that Appellant did not offer definitive proof that under no conditions is it conceivable that the federal claim might be entertained in the formal state proceeding if it is ever held or on appeal.

More than fourteen (14) months have elapsed since Appellant's license was summarily suspended without notice and he has yet to receive an evidentiary hearing enabling him to challenge the factual predicate of the TSO that has destroyed his professional career. The District Court's decision promises further delay unless reversed by this Court. It requires Appellant to remain without a remedy for Appellees' unconstitutional nonfeasance on the hope and prayer that some state tribunal at some unknown time might consider the merits of his federal due process claim. Whatever else *Younger v. Harris* may require, it should not require such a travesty of justice that creates a daunting if not insurmountable barrier to litigating federal claims in federal court against state administrative officials. Federal jurisdiction is the rule, not the exception, for entertaining federal questions.

## VI.    CONCLUSION

For the reasons set forth above, the decision of the District Court should be

reversed and the case remanded for further proceedings.

DATED: November 12, 2014

Respectfully Submitted,

_____/S/   Bruce E. Fein_____
BRUCE E. FEIN (D.C. Bar No. 446615)
BRUCE FEIN & ASSOCIATES, INC.
722 12th St. NW, 4th Floor
Washington, D.C. 20005
Telephone:  (703) 963-4968
Facsimile:  (202) 478-1664
Email: bruce@feinpoints.com
Attorney for *Plaintiff-Appellant*

_____/S/   Donald L. Smith_____
DONALD L. SMITH (South Carolina Bar No. 6626)
122 N. Main Street
Anderson, SC 29621
Telephone:  (864) 642-9284
Facsimile:  (864) 642-9285
Email: attorneydonaldsmith@gmail.com
Attorney for *Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-1937        **Caption:** Dr. Greg Battersby v. Dr. Joseph Carew

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑ this brief contains ____10,288____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using
   ____Times New Roman____ [*identify word processing program*] in
   ____14-point font____ [*identify font size and type style*]; **or**

   ☐ this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Bruce Fein_____

Attorney for Dr. Greg Battersby_____

Dated: 11/13/14_____

# CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2014, a true and correct copy of foregoing OPENING BRIEF FOR APPELLANT DR. GREGG BATTERSBY, was served upon Defendants' counsel of record via Electronic Claims File (ECF):

DATED: November 12, 2014

Respectfully Submitted,

_____/S/   Bruce E. Fein_____
BRUCE E. FEIN (D.C. Bar No. 446615)
BRUCE FEIN & ASSOCIATES, INC.
722 12th St. NW, 4th Floor
Washington, D.C. 20005
Telephone:  (703) 963-4968
Facsimile:  (202) 478-1664
Email: bruce@feinpoints.com
Attorney for *Plaintiff-Appellant*

_____/S/   Donald L. Smith_____
DONALD L. SMITH (South Carolina Bar No. 6626)
122 N. Main Street
Anderson, SC 29621
Telephone:  (864) 642-9284
Facsimile:  (864) 642-9285
Email: attorneydonaldsmith@gmail.com
Attorney for *Plaintiff-Appellant*