No. 14-1937

In The

**UNITED STATE COURT OF APPEALS**

For the Fourth Circuit

DR. GREGG BATTERSBY,

Plaintiff-Appellant,

v.

DR. JOSEPH CAREW, in his individual and official capacities; DR. RICHARD HEAVNER, in his individual and official capacities; DR. BRIAN HUGHES, in his individual and official capacities; DR. JEANNE MCDANIEL-GREEN, in her individual and official capacities; DR. JOHN MCGINNIS, in his individual and official capacities; DR. DAVID MRUZ, in his individual and official capacities; DR. RALPH ROLES, in his individual and official capacities; DR. HARVEY GARCIA, in his individual and official capacities; EVERETT J. MERCER, in his individual and official capacities; JOHN DOES 1-10,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT ANDERSON DIVISION

———————————————

RESPONSE BRIEF OF
DEFENDANTS-APPELLEES

———————————————

Eugene H. Matthews
RICHARDSON PLOWDEN & ROBINSON, P.A.
Post Office Drawer 7788
Columbia, South Carolina 29202
T: (803) 771-4400
Counsel for Defendants-Appellees

i

## <u>CORPORATE DISCLOSURE STATEMENT</u>

A Corporate Disclosure Statement is not applicable pursuant to Local Rule 26.1 and Rule 26.1, Federal Rules of Appellate Procedure.

The Appellant and Appellees in this matter are individuals.

# **TABLE OF CONTENTS**

Corporate Disclosure Statement ........................................................ i

Table of Contents ........................................................ ii

Table of Authorities ........................................................ iii

I. Statement of Jurisdiction ........................................................1

II. Statement of Issues Presented ........................................................2

III. Statement of the Case ........................................................ 3

IV. Summary of the Argument ........................................................ 10

V. Argument........................................................ 12

     I.     STANDARD OF REVIEW ........................................................ 12

     II.    THE U.S. DISTRICT COURT CORRECTLY DETERMINED
         THAT THE DEFENDANTS ARE ENTITLED TO
         ABSOLUTE IMMUNITY FROM THE PLAINTIFF'S CLAIM
         ........................................................ 12

     III.   THE U.S. DISTRICT COURT CORRECTLY DETERMINED
         THAT THE *YOUNGER* ABSENTION DOCTRINE APPLIED
         TO THIS CASE, AND THAT THE PLAINTIFF'S CLAIMS
         FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF
         WERE BARRED ........................................................ 22

VI. CONCLUSION........................................................ 27

CERTIFICATE OF COMPLIANCE........................................................ 28

CERTIFICATE OF SERVICE ........................................................ 29

## TABLE OF AUTHORITIES

### Federal Cases

*Amanatullah v. Colorado Bd. of Medical Examiners,*
187 F.3d 1160 (10th Cir. 1999)...................................................... 26

*Beck v. Texas State Bd. of Dental Examiners,*
204 F.3d 629 (5th Cir. 2000)................................................... 14, 16

*Bettencourt v. Board of Registration in Medicine of Com. of Mass.,*
904 F.2d 772 (1st Cir. 1990).................................................. 14, 22

*Bieber v. South Carolina Com'n on Lawyer Conduct,*
2008 WL 4442629 (D.S.C. Sept. 24, 2008)........................... 22, 23, 25

*Buckwalter v. Nevada Bd. of Medical Examiners,*
378 F.3d 737 (9th Cir. 2012).......................................................... 25

*Butz v. Economou,*
438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1977).......... 12, 13, 14, 15, 16, 21

*Deakins v. Monaghan,*
484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)........................ 26

*Federal Deposit Ins. Corp. v. Mallen,*
486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988).................... 17

*Gilliam v. Foster,*
75 F3d 881 (4th Cir. 1996)............................................................ 26

*Giuffre v. Bissell,*
31 F.3d 1241 (3rd Cir. 1994) ........................................................ 20

*Goldstein v. Moatz,*
364 F.3d 205 (4th Cir. 2004)......................................................... 21

*Horwitz v. Bd. of Med. Examiners of State of Colo.,*
822 F.2d 1508 (10th Cir. 1987)............................... 13, 14, 15, 16, 17

*Iko v. Shreve,*
535 F.3d 225 (4th Cir. 2008)......................................................... 12

*Imbler v. Pachtman,*
424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d (1975) ............................. 13

*Laurel Sand & Gravel, Inc. v. Wilson,*
519 F.3d 156 (4th Cir. 2008)................................................... 22, 24

*Manion v. Michigan Board of Medicine,*
765 F.2d 269 (6th Cir. 1992)......................................................... 19

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,*
457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)..................... 22

*Moore v. City of Ashville, N.C.,*
396 F.3d 385 (4th Cir. 2005)................................................................ 24
*New Orleans Public Serv. v. Council of New Orleans,*
491 U.S. 350, 109 S.Ct., 2506, 105 L.Ed.2d 298 (1989)....................... 23
*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,*
477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986)......................... 24
*Olsen v. Idaho State Bd. of Medicine,*
363 F.3d 916 (9th Cir. 2004)................................................. 14, 16, 17
*Pate v. United States,*
277 F.Supp.2d 1 (D.D.C. 2003) .......................................................... 18, 19
*Pearson v. Callahan,*
555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)......................... 21
*Phillips v. Virginia Bd. of Med.,*
749 F.Supp. 715 (E.D. Va. 1990) ........................................................ 23
*Pierson v. Ray,*
386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d (1986)................... 12, 15, 16
*Richter v. Connor,*
21 F.3d 423 (4th Cir. 1994)................................................................ 18
*Shafizadeh v. Bowles,*
476 Fed.Appx. 71 (6th Cir. 2012) ...................................................... 25
*Shaw v. Stroud,*
13 F.3d 791 (4th Cir. 1994)................................................................ 12
*Stump v. Sparkman,*
435 U.S. 349, S.Ct. 1099, 55 L.Ed.2d 331 (1978)....................... 14, 20
*Thompson v. Duke,*
882 F.2d 1180 (7th Cir. 1989)...................................................... 18, 19
*Watts v. Burkhart,*
978 F.2d 269 (6th Cir. 1992)....................................... 13, 14, 19, 20
*Will v. Michigan Dep't of State Police*,
491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989 ...........................3
*Younger v. Harris,*
401 U.S. 37 (1971) ....................................... 2, 11, 22, 23, 24, 25, 26

## Federal Statutes

12 U.S.C. § 1818(g) ..................................................................... 17
12 U.S.C. § 1818(g)(3).................................................................. 17
28 U.S.C. § 1291 ............................................................................1
28 U.S.C. § 1331 ............................................................................1

42 U.S.C. § 1983 .................................................................. 1, 2, 3, 7, 10, 12, 25
Federal Courts Improvement Act of 1996,
Pub.L. No. 104-317, 110 Stat. 3847 ............................................................ 25

## State Statutes

S.C. Code Ann. § 1-23-370(c) ............................................................ 4, 16
S.C. Code Ann. § 40-9-10, *et seq.* ...................................................... 15
S.C. Code Ann. § 40-9-30 ....................................................................3
S.C. Code Ann. § 40-9-30(B) ..............................................................3
S.C. Code Ann. § 40-9-30(C) ..............................................................3
S.C. Code Ann. § 40-9-30(D) ..............................................................4
S.C. Code Ann. § 40-9-31 ................................................................ 4, 16

## State Regulations

S.C. Reg. § 25-9 ...................................................................... 3, 15, 16
S.C. Reg. § 25-9(A)(1) ..................................................................... 4, 5
S.C. Reg. § 25-9(B) ..........................................................................4

## Federal Rules

Fed.R.App.P. 4(1)(A) ........................................................................1
Fed.R.App.P. 28(d) ..........................................................................1

# I.    STATEMENT OF JURISDICTION

Defendants/Appellees[1] agree with the Plaintiff/Appellant that the United States District Court for the District of South Carolina possessed subject matter jurisdiction of the case under 28 U.S.C. § 1331, as the Plaintiff/Appellant's sole claim was brought under 42 U.S.C. § 1983.

This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 1291, as the United States District Court for the District of South Carolina issued a final order dismissing the case with prejudice on August 28, 2014, and Plaintiff/Appellant filed a Notice of Appeal on September 5, 2014, within the time set forth in FED. R. APP. P.  4(1)(A).

---

[1] Pursuant to FED. R. APP. P. 28(d), the Defendants/ Appellees hereinafter are referenced as the "Defendants," and the Plaintiff/Appellant is referenced as the "Plaintiff."

1

## II.    STATEMENT OF ISSUES PRESENTED

1.    Did the U.S. District Court correctly grant the Defendants' Motion for Summary Judgment and dismiss the Plaintiff's claim for money damages under 42 U.S.C. § 1983 on grounds of absolute immunity?

2.    Did the U.S. District Court correctly grant the Defendants' Motion for Summary Judgment and dismiss the Plaintiff's claim for declaratory and injunctive relief under the *Younger* abstention doctrine?

### III.   STATEMENT OF THE CASE

Plaintiff Greg Battersby brought suit under 42 U.S.C. § 1983 against members of the South Carolina Board of Chiropractic Examiners (the "Board") because they allegedly "voted to temporarily suspend Plaintiff's license indefinitely without a hearing on August 20, 2013." *[App. at 11-13].*  Defendants Dr. Joseph Carew, Dr. Richard Heavner, Dr. Brian Hughes, Dr. Jeanne McDaniel-Green, Dr. John McGinnis, Dr. David Mruz, Dr. Ralph Roles, Dr. Harvey Garcia, and E.J. Mercer were named as Defendants in their official[2] and individual capacities as members of the Board.

The Board is constituted under S.C. Code Ann. § 40-9-30.  Members are appointed by the Governor and serve a term of four (4) years and until their successors are appointed and qualify. To insulate the members from political influence, they can only be removed from the Board for specified causes, and only after notice of the Governor's intent.  S.C. Code Ann. § 40-9-30(B).

The Board is empowered to adopt regulations, including regulations related to professional discipline. S.C. Code Ann. § 40-9-30(C); S.C. Reg. § 25-9.   The Board is also empowered to "***cause the prosecution*** of all persons violating this

---

[2] Plaintiff does not appear to challenge the Court's ruling that persons acting in their "official" capacities cannot be sued under 42 U.S.C. § 1983 for money damages. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

chapter and have power to incur necessary expenses for this chapter," and to "***order the revocation, suspension, or restriction of the license of a licensee to practice chiropractic or take other disciplinary action, including assessing a civil fine for a violation of this chapter***."  S.C. Code Ann. § 40-9-30(D) (emphasis added).

In the ordinary course of business, the Board may exercise its disciplinary powers in accordance with S.C. Code Ann. § 40-9-31 and S.C. Reg. 25-9(B), which set forth the procedure for the issuance of Formal Complaints, presentation of the case before the Board, and the appeal process through the Administrative Law Court ("ALC") and other higher courts.

In addition to the Board's normal disciplinary powers, the Board also has the emergency power to issue <u>temporary suspension orders</u> where a complaint regarding alleged professional misconduct involves "what may be determined to be an imminent threat to the public."  S.C. Reg. § 25-9(A)(1).[3]  The regulation also states as follows:

> A temporary suspension order may be issued without a prior hearing being afforded to the licensee, in which event the licensee may request by the close of the next business day after receipt of the order a review by an administrative hearing officer.

> The fact of suspension or restriction of a license, and the fact of any subsequent related action, is public information under the Freedom of

---

[3] Summary suspension orders are also more generally permitted under S.C. Code Ann. § 1-23-370(c).  S.C. Reg. § 25-9(A)(1) is specifically relevant to the Board.

4

Information Act after issuance of an order, unless a review by the administrative hearing officer has been timely requested in writing.

Filing a written request for a review by the administrative hearing officer does not stay the temporary suspension and no stay may be issued; however, the fact of the issuance of the temporary suspension order must not be made public until the time for requesting a review has passed or the administrative hearing officer issues an order after a review hearing.

Upon proper written request, a review hearing must be held by the administrative hearing officer within three business days of the filing of the request for review, unless otherwise agreed by the parties.

If the issuance of the temporary suspension order is not sustained by the administrative hearing officer, the matter must remain confidential and must not be made public, except to the extent the Board considers it relevant to the final decision of the Board.

S.C. Reg. § 25-9(A)(1).

With specific regard to the Plaintiff, in early August 2013, Joel Griggs, an investigator with the Office of Investigations and Enforcement ("OIE") of the South Carolina Department of Labor, Licensing and Regulation ("LLR") received notice that the Plaintiff had been arrested on two counts of indecent exposure for exposing his genitalia at his place of practice in May 2013 and June 2013. [*App. at 47-52*].[4]  Following contacts with the investigators from the Anderson County Sheriff's Office, OIE initiated an investigation into the Plaintiff's alleged

---

[4] The Appendix filed by the Plaintiff contains a discrepancy between the page numbers used by the Plaintiff in his brief, which appear in black at the bottom of the page, and the numbers in red that are stamped at the top of the page by the Clerk.  Unless otherwise directed by the Court, to ease confusion, the Defendants will use the same numbers as the Plaintiff.

5

professional misconduct. Investigator Griggs filed an affidavit, dated August 16, 2013, detailing the substance of the arrests and including the incident reports related to the arrests. [**App. at 47-52**].[5]

On August 20, 2013, the Vice Chairman of the Board signed an **Order of Temporary Suspension**, which was promptly served upon the Plaintiff's counsel, Sarah Drawdy. [**App. at 40-43**].

Ms. Drawdy also received the Board's **Order Requiring Evaluation**, in which the Plaintiff was required to submit to an evaluation by R. Gregg Dwyer, M.D., Ed.D., to determine whether the Plaintiff had sustained a physical or mental disability which rendered his further practice dangerous to the public. On recommendation by the evaluating physician, the Order of Temporary Suspension could be lifted and the Plaintiff could again begin to practice. [**App. at 44-46**].

On behalf of the Plaintiff, Ms. Drawdy made a timely demand for an administrative hearing to contest the Order of Temporary Suspension ("TSO"), although the hearing was postponed at the request of the Plaintiff's counsel. [**App. at 28, 169**].

Ultimately, at the request of the Plaintiff's counsel, the hearing was scheduled for October 30, 2013 before Dr. W. Dean Banks, D.C. At the hearing, the Plaintiff and his counsel had the opportunity to make legal arguments, cross-

---

[5] Plaintiff was also previously subjected to professional discipline in other jurisdictions based on similar conduct. [**App. at 110-113, 120-121, 126, 133**].

examine witnesses produced by LLR, and present evidence and witnesses of their own. Plaintiff's counsel cross-examined Christa Bell, the Assistant Deputy Director of LLR's Office of Investigation and Enforcement, as well as LLR Investigator Sym Singh [*App. at 109-146*]. The Plaintiff was actually sworn in to give testimony, but ultimately decided not to do so. [*App. at 146-147*]. Following additional argument by counsel, Hearing Officer Banks decided as follows:

> Okay. So after hearing this testimony, what I've decided is I want to leave the TSO in place pending the evaluation to be done as previously recommended. And if it's deemed – if Dr. Battersby is deemed suitable to practice, then the TSO should be lifted and he should be allowed to practice. But during the practice, he should have a chaperone in the room as per the recommendation.

[*App. at 156, lines 11-19*]. For reasons unknown to the Defendants, the Plaintiff has not availed himself of the evaluation in order to lift the TSO, even though the Plaintiff's <u>own counsel</u> suggested that he be allowed to practice with a female nurse present when he treated female patients. [*App. at 16, lines 12-17*].

Following this hearing, and while LLR was continuing its investigation into the complaints filed against the Plaintiff, his counsel filed with the Board a "Motion to Dismiss Order of Temporary Suspension and Memorandum in Support" on or about November 6, 2014. [*App. at 170-189*]. On March 6, 2014, the Plaintiff also filed this lawsuit, bringing a single cause of action under 42 U.S.C. § 1983 against each Defendant, and amended his Complaint shortly thereafter. [*App. at 4-5, 8-18*].

7

Following the conclusion of LLR's investigation, LLR filed a Formal Complaint against the Plaintiff before the Board on July 2, 2014. [***App. at 190-194***]. On July 24, 2014, rather than respond to the Formal Complaint, the Plaintiff's counsel initially requested that the proceeding before the Board "be stayed until [Plaintiff's] Motion for Partial Summary Judgment had been adjudicated." [***Doc. 21-2, p. 2***].[6] In the alternative, the Plaintiff's counsel requested a 30-day extension to file a response, which LLR granted. [***Doc. 21-2, pp. 2-4***].

On or about September 4, 2014, the Plaintiff filed with the Board a response to LLR's Formal Complaint. [***App. at 195-198***].[7] In his response, the Plaintiff demanded that the Board members recuse themselves, claiming that they "lack the impartiality required by the due process clause of the Fourteenth Amendment…" [***App. at 197***]. LLR considered the Plaintiff's request, and ultimately determined that the hearing would be conducted before a hearing officer, who would make a recommendation to the full Board, which would in turn hold another hearing and

---

[6] Documents 21-1 and 21-2 are the Defendants' supplements to the Appendix filed by the Plaintiff.

[7] Just prior to the date that the Plaintiff filed his response to the Formal Complaint, the U.S. District Court granted the Defendants' Motion for Summary Judgment on August 28, 2014, dismissing the Plaintiff's federal action. [***App. at 26-39***].

issue a final decision.   [***Doc. 21-2, pp. 5-6***].  LLR is currently working to schedule the hearing in conjunction with the Plaintiff's counsel.[8]

---

[8] In his brief, the Plaintiff does not reference the efforts of his own counsel to delay the initial hearing on the TSO, his request for an extension to respond to the Formal Complaint, his effort to disqualify the Board from hearing the Formal Complaint, or any subsequent efforts by LLR to promptly schedule the hearing on the Formal Complaint.  Rather, the Plaintiff simply states that "[n]o hearing date has been set by Appellees to adjudicate the formal complaint."  (Appellant's Brief, p. 2).  At very least, this omission is glaring and, unless corrected, could mislead the Court.

# IV.    SUMMARY OF THE ARGUMENT

Plaintiff Greg Battersby is a chiropractor whose license is under the authority of the South Carolina Board of Chiropractic Examiners (the "Board"). Following the Plaintiff's arrests for indecent exposure to two of his patients, the Board temporarily suspended the Plaintiff's license in August 2013.

The Plaintiff asked for, and was granted, a hearing in October 2013 to challenge the temporary suspension.  At the hearing, the Plaintiff's counsel cross-examined witnesses, presented evidence, and argued that the hearing's discovery and evidentiary procedures were insufficient.

Several months after the October 2013 hearing, while LLR's investigation into the Plaintiff's conduct was continuing, the Plaintiff filed the instant action. Thereafter, LLR completed its investigation, and in July 2014, the Board issued a Formal Complaint against the Plaintiff.  Following requests for a stay and/or for a continuance, the Plaintiff answered the Formal Complaint in September 2014.  To this date, the parties are attempting to schedule a hearing concerning the Plaintiff's alleged misconduct.

.  The Defendants – individual members of the Board – asserted "absolute immunity" to the Plaintiff's claim for money damages against the Defendants in their individual capacities under 42 U.S.C. § 1983.  The U.S. District Court granted their Motion for Summary Judgment on that basis, finding that the Board members

where "quasi-judicial" officials who are protected by absolute immunity from lawsuits such as the Plaintiff's. More specifically, when it applied the appropriate principles to the question before it in the instant case, the U.S. District Court correctly found that the Defendants were "plainly entitled to absolute immunity."

As to the Plaintiff's claim for injunctive and declaratory relief, the U.S. District Court properly determined that the *Younger* abstention doctrine applied. More specifically, the U.S. District Court properly found that the abstention doctrine founded in *Younger v. Harris,* 401 U.S. 37, 45 (1971), requires a federal district court to abstain from interfering in state proceedings, even if jurisdiction exists, if there is (1) an ongoing or pending state judicial proceeding, instituted prior to any substantial progress in the federal proceedings; (2) that implicates important state interests; and (3) provides the plaintiff with an adequate opportunity to raise the federal constitutional claim advanced in the federal lawsuit. Under these elements, the U.S. District Court found clearly that the *Younger* abstention doctrine applied to the Plaintiff's remaining claims for injunctive and declaratory relief.

# V.    ARGUMENT

## I.    STANDARD OF REVIEW.

This Court reviews *de novo* a U.S. District Court's grant of a Motion for summary Judgment. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994). The standard requires that the Court "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Iko v. Shreve,* 535 F.3d 225, 230 (4th Cir. 2008). Summary judgment is appropriate if "there is no genuine issue as to material fact and ... the moving party is entitled to judgment as a matter of law." *Shaw,* 13 F.3d at 798.

## II.    THE U.S. DISTRICT COURT CORRECTLY DETERMINED THAT THE DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY FROM THE PLAINTIFF'S CLAIM.

Addressing whether the Defendants could assert "absolute immunity" to the Plaintiff's claim for money damages against the Defendants in their individual capacities under 42 U.S.C. § 1983, the U.S. District Court properly began its analysis by focusing on the function that the Board carried out. In that regard, our Supreme Court has long recognized that "there are some officials whose special functions require a full exemption from liability." *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1977). Such officials include, among others, judges performing judicial acts within their jurisdiction, *see, e.g., Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1966),

12

prosecutors performing acts "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1975), and certain "quasi-judicial" agency officials who, irrespective of their *title,* perform *functions* essentially similar to those of judges or prosecutors, in a setting similar to that of a court. *Butz,* 438 U.S. at 511-17, 98 S.Ct. 2894 at 2913-16; *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992) (absolute immunity protected professional licensing board members regarding summary suspension of professional's license).

Absolute immunity, which affords complete protection from liability for damages, defeats a lawsuit at the outset. *Horwitz v. Bd. of Med. Examiners of State of Colo.,* 822 F.2d 1508, 1512-1515 (10th Cir. 1987) ("There exists a strong need to insure that individual board members perform their functions for the public good without harassment or intimidation"). Board members of a state's professional licensing board, when acting in an adjudicatory capacity, as here, fall into the category of "quasi-judicial" agency officials who are protected by absolute immunity from lawsuits such as Plaintiff's lawsuit.

When a board member is sued for actions taken in his or her adjudicative capacity, a court must grant the member absolute immunity. To determine whether such absolute immunity applies, courts usually consider three factors:

13

- First, does a Board member, like a judge, perform a traditional "adjudicatory" function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from direct political influence)?

- Second, does a Board member, like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions?

- Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a professional's constitutional rights?

*See Butz,* 438 U.S. at  510–13, 98 S.Ct. at 2912–14;  *Horwitz*, 822 F.2d at 1513; *Watts*, 978 F.2d at 278; *Bettencourt v. Board of Registration In Medicine of Com. of Mass.*, 904 F.2d 772 (1st Cir. 1990).[9]

Importantly, professional board members are entitled to absolute immunity "from liability for [their] judicial acts even if [their] exercise of authority is flawed by the commission of grave procedural error." *Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).  Thus, the inquiry is not whether the defendants committed error, but whether adequate safeguards existed in the statutory and regulatory scheme.  *Beck*, 204 F.3d at 635-636; *Watts*, 978 F.2d at 277 (same).

When it applied these principles to the instant case, the U.S. District Court

---

[9] In applying *Butz*, other courts use six separate categories rather than three, although the content of the inquiry remains nearly identical.  *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 924-926 (9th Cir. 2004).

14

correctly found that the Defendants, all Board members, were "plainly entitled to absolute immunity." [*App. at 33*]. At the heart of his analysis, Judge Herlong correctly observed that,

> Based on the undisputed facts, the Plaintiff was not denied post-deprivation hearing. In essence, the Plaintiff is challenging the sufficiency of the hearing and the procedures employed by the Defendants in ordering the temporary suspension of his license.

[*App. at 33*].[10]

As to the first two elements set forth in *Butz*, in finding that the Board "functions similarly to a judge and makes 'sufficiently controversial' decisions," Judge Herlong noted that the process was adversarial in nature and that the Board acts as the adjudicator.[11]  [*App. at 33*]. Indeed, it is hardly difficult to show that the act of suspending or revoking a chiropractor's license – which bars the chiropractor from practicing in this state – is likely to stimulate a litigious reaction from the disappointed chiropractor, and actually has done so in this case, making the need for absolute immunity apparent. *See Horwitz,* 822 F.2d at 1515; *Pierson v.*

---

[10] In this regard, the Plaintiff's arguments that he did not receive "adequate notice of a hearing" or that he had "no means of challenging a sanction" seem particularly misplaced. In fact, the Plaintiff had both, and took advantage of both, and even had the opportunity to testify himself – which he ultimately refused – in the October 2013 hearing.

[11] Furthermore, as insulation from direct political influence, a Board member serves a set term (four years), and can be removed only for cause. *See, e.g.,* S.C. Code Ann. § 40-9-10 et seq.; S.C Reg. § 25-9; *Horwitz*, 822 F.2d 1508 at 1515 (medical board members function as judges in adjudicatory roles).

15

*Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1966) ("It is a judge's duty to decide all cases ..., including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption"). Indeed, the adversarial nature of the proceedings before the Board <u>in this case</u> demonstrates that the disciplinary proceedings before it – <u>especially</u> those involving the suspension and/or revocation of a chiropractor's license – are responsibilities that are likely to "stimulate numerous damages actions," and as a consequence, granting <u>absolute</u> immunity ensures that those performing these quasi-judicial functions are accorded protection from "harassment and intimidation." *Butz,* 438 U.S. at 512, 98 S.Ct. 2894; *Olsen,* 363 F.3d at 924; *Horwitz,* 822 F.2d at 1515; *Beck*, 204 F.3d at 636.

As to the third element, satisfactory safeguards exist to "enhance the reliability of information and the impartiality of the decisionmaking process...." *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913. As set forth in S.C. Code Ann. § 1-23-370(c), S.C. Code Ann. § 40-9-31, and S.C. Reg. § 25-9, South Carolina statutes and regulations set forth a sophisticated system in which parties to licensure proceedings litigate in the context of an adversarial process. As in this case, parties may be represented by counsel. There are transcribed records, written decisions, presentation of evidence, and rights to appeal, including appeal to the

Administrative Law Court (ALC) and to the judiciary.[12]    Indeed, Judge Herlong noted that the Plaintiff had a right to present evidence and be represented by counsel – and, as set forth above in detail, he <u>was</u> represented by counsel, he <u>did</u> present constitutional and other legal arguments, he <u>did</u> cross-examine LLR's witnesses, and he <u>did</u> have the option to introduce evidence of his own.   [***App. at 33-34***].   These and other safeguards indicate that enough checks on malicious action by Board members exist to warrant a grant of absolute immunity for the Board members' actions in their adjudicatory capacities. *See Horwitz,* 822 F.2d at 1515 ("There exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance on private damages lawsuits"); *Olsen,* 363 F.3d at 924.

Plaintiff's argument that the "insufficiency" of the post-suspension hearing amounts to a due process violation is undercut by the very authority he cited in his own brief.   In *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), the U.S. Supreme Court <u>upheld</u> the FDIC's application of 12 U.S.C. § 1818(g), finding that the FDIC did not violate due process when it engaged in the post-suspension proceedings as provided by the applicable statute. The statute in question – 12 U.S.C. § 1818(g)(3) – specifically provided for a post-suspension hearing where a suspended banking official could "appear, personally

---

[12] Indeed, even today, Plaintiff could have availed himself of the right to attend the evaluation in order to seek an end to the TSO, and could do so even today.

or through counsel, before one or more members of the agency or designated employees of the agency to **submit written materials (or, at the discretion of the agency, oral testimony) and oral argument**." (emphasis added). By comparison, the post-suspension due process received by Plaintiff in this case included a prompt hearing scheduled at the request of Plaintiff's counsel, an opportunity to present evidence, an opportunity to cross-examine LLR witnesses, and an opportunity to present his own witnesses, including Plaintiff himself.

In sum, Judge Herlong was correct in observing that Plaintiff's argument must be considered to be a challenge to the <u>sufficiency</u> of the post-deprivation hearing rather than the absence of such a hearing. In this regard, the U.S. District Court's citations to *Richter v. Connor*, 21 F.3d 423, at *3-5 (4th Cir. 1994) (table case), *Thompson v. Duke*, 882 F.2d 1180, 1186 (7th Cir. 1989), and *Pate v. United States*, 277 F.Supp.2d 1 (D.D.C. 2003), are particularly apt, as each case affirms the application of absolute quasi-judicial immunity where the plaintiff raises questions of insufficient due process. In *Richter*, the court rejected the plaintiff's argument that the "Board Defendants' failure to adhere" to its procedures abrogated their absolute immunity because "a quasi-judicial official does not lose immunity for committing procedural errors." 21 F.3d 423, at *4. Similarly, in rejecting a plaintiff's argument that a failure to conduct a timely preliminary parole revocation hearing stripped quasi-judicial officials of absolute immunity, the

18

*Thompson* court found as follows:

> In the continuum of judicial proceedings some judicial acts require extensive exercise of a judge's decision-making skills and others do not—yet all such acts make up the judicial function regardless of their isolated importance. In the judicial context, <u>scheduling a case for hearing is part of the routine procedure in any litigated matter. However, the fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function</u>.

> Here, as in *Trotter*, the state defendants clearly had a duty to schedule and conduct a parole violation hearing. Such activity, while perhaps routine in many cases, is obviously an integral judicial (or quasi-judicial) function subject to absolute immunity.

> Indeed, if we were to adopt Thompson's interpretation of *Forrester*, we would effectively subject judicial officers, as well as persons performing quasi-judicial functions, to unlimited litigation testing whether particular judicial functions, alleged to be mechanical or routine, were entitled to immunity from damages liability.

*Thompson*, 882 F.2d at 1184-1185 (citations omitted) (emphasis added). Likewise, the court in *Pate* adopted the same reasoning in applying absolute quasi-judicial immunity where the plaintiff alleged a due process violation due to a delay in scheduling a parole hearing. *Pate,* 277 F.Supp.2d at 10.

Indeed, these decisions follow the path set by the Sixth Circuit Court of Appeals' decision in *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992), which decidedly rejected *Manion v Michigan Board of Medicine*, 765 F.2d 590 (6th Cir. 1985), a case upon which Plaintiff relies. *Watts* involved a <u>summary</u> suspension of a physician's license, and like the instant case, the physician alleged that the review his summary suspension received violated his due process rights. In

rejecting Watts' claim, the Sixth Circuit Court of Appeals found as follows:

> Dr. Watts lists no fewer than 14 procedural irregularities by which the suspension hearing was supposedly tainted. Many of the alleged irregularities – the failure to have an administrative law judge preside, for example – probably reflect the fact that this was a summary suspension proceeding and not a full-scale revocation proceeding. Be that as it may, however, there can be absolutely no question of the board's jurisdiction to conduct the hearing – and as long as a judicial officer has jurisdiction over the subject matter before him, he "is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."

*Watts*, 978 F.2d at 277 (quoting *Stump v. Sparkman,* 435 U.S. at 359, 98 S.Ct. at 1106).

The other cases cited by Plaintiff in support of his argument bear little, if any, relevance to the instant case.  For instance, he cites to *Giuffre v. Bissell*, 31 F.3d 1241 (3rd Cir. 1994), where a prosecutor was denied absolute immunity for acting in his "administrative capacity" rather than as an "advocate" when directed police to question Giuffre concerning his future cooperation with investigators, or for allegedly "conspiring" to force Giuffre to forfeit two building lots to the County, in part by not charging him formally.  The *Giuffre* court found that those actions "have no functional tie to the judicial process," and the prosecutor in question was not entitled to absolute immunity merely because they were actions undertaken by a prosecutor.   31 F.3d at 1254.[13]   Similarly, the defendants in

_____

[13] The stark difference between the facts *Guiffre* and the instant case is clearly demonstrated simply by noting (1) that the Plaintiff could have testified at the

*Goldstein v. Moatz*, 364 F.3d 205, 214-218 (4ᵗʰ Cir. 2004), were not Board members but persons acting as investigators, and they were denied absolute immunity because they were engaged in "administrative" rather than "prosecutorial" conduct.

Accordingly, following *Butz v. Economou* and its progeny, the U.S. District Court correctly found that the Defendants are protected from the Plaintiff's claim by "absolute immunity," based on their status as quasi-judicial officials. For this reason alone, the lawsuit must be dismissed with prejudice.[14]

---

October 2013 hearing, (2) that the Plaintiff will have an opportunity to testify at other hearings before the Board, should he choose to appear for them, (3) that the Plaintiff can appeal Board decisions to the ALC and the judiciary, and (4) that the Plaintiff no Defendant in this case attempted to use process to extract property from him.

[14] In his brief, the Plaintiff also argues that the Defendants are not entitled to "qualified" immunity, although the U.S. District Court did not address the issue in its order. As a practical matter, the very fact that a U.S. District Court has already found that the Defendants are absolutely immune from liability must establish – at very least – that the alleged "constitutional deprivation" was not "clearly established" prior to this case. For that reason alone, Plaintiff's arguments regarding qualified immunity are groundless. *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (defendant is entitled to judgment if either "the facts ... [do not] make out a violation of a constitutional right" or if the law was not " 'clearly established' at the time of defendant's alleged misconduct."). Similarly, the Plaintiff's brief does not make clear why he believes that he is entitled to "partial" summary judgment, or why the U.S. District Court erred in ruling that, "[a]t a minimum, there are numerous genuine issues of material fact with respect to the Plaintiff's claims for relief." [***App. at 30***].

**III.** **THE U.S. DISTRICT COURT CORRECTLY DETERMINED THAT THE *YOUNGER* ABSTENTION DOCTRINE APPLIED TO THIS CASE, AND THAT THE PLAINTIFF'S CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF WERE BARRED.**

The abstention doctrine founded in *Younger v. Harris,* 401 U.S. 37, 45 (1971), requires a federal district court to abstain from interfering in state proceedings, even if jurisdiction exists, if there is (1) an ongoing or pending state judicial proceeding, instituted prior to any substantial progress in the federal proceedings; (2) that implicates important state interests; and (3) provides the plaintiff with an adequate opportunity to raise the federal constitutional claim advanced in the federal lawsuit. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432-34, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 165 (4th Cir. 2008). If the elements are satisfied, a district court must abstain from interfering unless there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex,* 457 U.S. at 435.

As to the first element, it is undeniable that state judicial proceedings in this matter have been previously instituted and are ongoing. The *Younger* abstention doctrine applies to state disciplinary proceedings. *See Middlesex,* 457 U.S. at 433-434; *Bettencourt*, 904 F.2d at 776-781; *Bieber v. South Carolina Com'n on Lawyer Conduct*, 2008 WL 4442629 (D.S.C. Sept. 24, 2008). In this case, the TSO in question was issued on or about August 20, 2013, and began a proceeding which

22

has now reached the phase of a Formal Complaint. This lawsuit was not initiated until long after the state proceedings began. *Bieber*, 2008 WL 4442629, at *2 ("Moreover, the filing of formal charges is not the initial stage of disciplinary proceedings. Disciplinary proceedings begin with screening, followed by a preliminary investigation, full investigation, filing of formal charges, discovery, hearing, and a review by the South Carolina Supreme Court"); *see New Orleans Public Serv. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 2521, 105 L.Ed.2d 298 (1989) (administrative proceedings that are "judicial in nature ... should be regarded as 'ongoing' for the purposes of *Younger* abstention until state appellate review is completed....") (concurring). It is clear that ongoing state proceedings were initiated prior to the initiation of this lawsuit.

As to the second element, it is equally undeniable that the state proceeding concerns important state interests, in this case regarding the safety of the public. See *Phillips v. Virginia Bd. of Med*., 749 F. Supp. 715, 722-23 (E.D. Va. 1990) ("It is difficult to imagine a state interest more important than the protection of citizens against the harms of unethical or incompetent practitioners of the healing arts.").

As to the third element, the U.S. District Court found that there was "no evidence before this court that the Plaintiff will be prevented from raising his constitutional claims in the hearing before the Defendants an don appeal to the South Carolina administrative law court." [*App. at 37*]. As a practical matter, the

23

state proceedings clearly provide the Plaintiff with an adequate opportunity to raise the federal constitutional claim advanced in the federal lawsuit. Specifically relevant to this case, the Supreme Court rejected the plaintiff's argument that abstention in favor of <u>administrative</u> proceedings[15] was inappropriate. *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, *Inc.*, 477 U.S. 619, 626-627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). The Fourth Circuit Court of Appeals has also found that, in administrative settings, abstention is appropriate because the agency can "construe its own statutory mandate in the light of federal constitutional principles," or because the plaintiff can raise its constitutional claims in "state-court judicial review of the administrative proceeding." *Moore v. City of Asheville, N.C.*, 396 F.3d 385, 395 (4th Cir. 2005) (quoting *Ohio Civil Rights Comm'n*, 477 U.S. at 629). Indeed, despite the Plaintiff's curious but entirely unfounded protestations to the contrary, nothing prevents the Plaintiff from bringing his Constitutional claims in the state proceedings, either before the Board, on appeal before the Administrative Law Court, or on appeal to South Carolina's appellate

---

[15] "[F]ederal intervention before a state court has had the opportunity to review an agency's decision . . . [creates] a disruption of the State's efforts to protect interests which it deems important." *Wilson*, 519 F.3d at 166 (internal quotation marks omitted). The purpose of abstention is "to ensure that state courts may construe state law in a way that avoids unwarranted determinations of federal constitutional questions and to maintain comity between the state and federal courts." *Id.* Accordingly, where a plaintiff fails "to exhaust its administrative remedies, and could have asserted its constitutional claims in the state proceedings . . . [the] principles of comity demand application of *Younger* abstention." *Id.* at 167.

24

courts. *See Bieber*, 2008 WL 4442629, at *2-3 ("Plaintiff has an opportunity to raise his constitutional claims in the hearing before Defendants and on appeal to the South Carolina Supreme Court. Nothing in the disciplinary rules bars Plaintiff from raising his First Amendment challenges. To hold that the state proceedings are inadequate for resolving federal claims would erode the well-established presumption that state courts will safeguard federal constitutional rights. As such, the court finds that Plaintiff is presented with an adequate opportunity to raise his federal claims.").

The Plaintiff also argues that *Younger* abstention is inappropriate because he seeks <u>monetary</u> damages as well as declaratory and injunctive[16] relief. As a practical matter, because the U.S. District Court properly found that the Defendants were immune from the Plaintiff's claim for money damages, it was entirely appropriate for Judge Herlong to abstain from hearing the Plaintiff's claims for injunctive and declaratory relief. *Buckwalter v. Nevada Bd. of Medical Examiners*, 678 F.3d 737, 747-748 (9th Cir. 2012) (district court properly abstained from hearing plaintiff's claim for declaratory relief under *Younger* abstention doctrine); *Shafizadeh v. Bowles*, 476 Fed.Appx. 71, 73 (6th Cir. 2012) (under

---

[16] With specific regard to the Plaintiff's claim for <u>injunctive</u> relief, it is clear that the Federal Courts Improvement Act of 1996, Pub.L. No. 104-317, 110 Stat. 3847, which amended 42 U.S.C. § 1983, provides that "injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

*Younger* abstention doctrine, federal court may not grant injunctive or declaratory relief that would interfere with state judicial proceedings pending at the time that a federal complaint is filed); *Amanatullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999) ("*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief-such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings-when such relief could adequately be sought before the state court."); *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996) (no declaratory relief where *Younger* abstention doctrine applied).

In any event, even if Judge Herlong has not dismissed the Plaintiff's claim for monetary relief, the proper procedure would be to <u>stay</u> the case pending resolution of the underlying state proceeding. *Deakins v. Monaghan,* 484 U.S. 193, 202–04, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (observing that because monetary damages are not available to defendants in state criminal proceedings, federal courts should stay instead of dismiss their claims until criminal proceedings are concluded).

## VI.    CONCLUSION

For the reasons set forth above, the Defendants move that the order of the U.S. District Court be AFFIRMED, and that Plaintiff's appeal be DISMISSED with prejudice, and that the Court grant any other such relief as it deems just and proper.

Dated this the 15th day of December, 2014.


RICHARDSON PLOWDEN & ROBINSON, P.A.

        s/Eugene H. Matthews
Eugene H. Matthews, S.C. Bar #10193, FID #7141
Post Office Drawer 7788
Columbia, South Carolina 29202
T: (803) 771-4400
F: (803) 779-0016
E-mail:  gmatthews@RichardsonPlowden.com

COUNSEL FOR DEFENDANTS DR. JOSEPH CAREW, DR. RICHARD HEAVNER, DR. BRIAN HUGHES, DR. JEANNE MCDANIEL-GREEN, DR. JOHN MCGINNIS, DR. DAVID MRUZ, DR. RALPH ROLES, DR. HARVEY GARCIA, E.J. MERCER, AND JOHN DOES 1-10, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES